IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

PEPSI ECKER,

    Plaintiff,

v.                                                                              Civil Action No.:5:16-CV-5
                                                                                         (JUDGE STAMP)

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

## REPORT AND RECOMMENDATION

### I.  INTRODUCTION

On January 19, 2016, the Plaintiff, Pepsi Ecker, by counsel, Scott B. Elkind, Esq., filed a complaint in this court to obtain judicial review of the final decision of the Commissioner of Social Security denying her claims for Supplemental Security Income ("SSI") benefits. ECF No. 1.

The Plaintiff also filed a motion to proceed *in forma pauperis* that this court granted. ECF No. 2 and 5.  The Commissioner filed her answer on May 12, 2016.  ECF No. 8.  The Plaintiff filed a Motion for Summary Judgment on June 10, 2016.  ECF No. 11.  The Commissioner filed a Motion for Summary Judgment on August 1, 2016.  ECF No. 16.

For the reasons discussed below, the court recommends that the Plaintiff's [ECF No. 11] Motion for Summary Judgement be **GRANTED IN PART** and the Commissioner's [ECF No. 16] Motion for Summary Judgement be **DENIED**.

### II.  FACTS

On December 15, 2012, the Plaintiff filed an application for supplemental security income alleging disability beginning March 1, 2003.  R. 11.  The Plaintiff's claim was denied initially on December 15, 2012, and upon reconsideration on May 10, 2013.  R. 11.  Thereafter, the Plaintiff

filed a written request for a hearing on July 8, 2013.  R. 11.

The Administrative Law Judge ("ALJ"), Thomas W. Erwin, held a video hearing on September 12, 2014.  R. 10-11.  The Plaintiff, represented by counsel, testified at the hearing.  R. 30-46.  Vocation Expert ("VE") Marilyn Stroud testified by phone.  R. 46-50.  On October 16, 2014, the ALJ issued an unfavorable decision to the Plaintiff.  R. 8.  On November 17, 2015, the appeals counsel denied the Plaintiff's request for review.  R. 1.  The Plaintiff then timely brought her claim before this court.

### III.  ALJ's FINDINGS

In determining whether the Plaintiff was disabled, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920.  The first step in the process is determining whether a claimant is currently engaged in substantial gainful activity.  §§ 404.1520(b); 416.920(b).  If the claimant is not engaging in substantial gainful activity, then the second step requires the ALJ to determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe.  §§ 404.1520©; 416.920©.  If the claimant has a severe impairment or combination of impairments, then the analysis moves to the third step in the sequence, which requires the ALJ to determine whether the claimant's impairments or combination of impairments meets or equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").  §§ 404.1520(d); 416.920(d).  If an impairment meets or equals a listed impairment, the claimant is disabled.  *Id.*  However, if the impairment does not meet or equal a listed impairment, the ALJ must determine the claimant's residual functional capacity ("RFC"), which is the claimant's ability to do physical and mental work activities on a sustained basis despite the limitations of her impairments.  §§ 404.1520(e); 416.920(e).

After determining the claimant's RFC, the ALJ must determine, at step four, whether the claimant has the RFC to perform the requirements of her past relevant work. §§ 404.1520(f); 416.920(f). If the claimant does not have the RFC to do her past relevant work, then she has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, at the final step in the process, that other work exists in significant numbers in the national economy that the claimant can do, given the claimant's RFC, age, education, and work experiences. §§ 404.1520(g); 416.920(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868–69 (4th Cir. 1983).

At step one of the sequential process, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since December 15, 2012, the date of her application. R. 13. At step two, the ALJ found that the Plaintiff had the following severe impairment: depression, anxiety, hypertension, and headaches. R. 13. At the third step, the ALJ found that none of the Plaintiff's impairments met or medically equaled the severity of any of the impairments contained in the Listings. R. 13. The ALJ then determined that the Plaintiff had the RFC to perform:

> medium work as defined in 20 C.F.R. 416.967©, with the following exceptions. Due to headaches, the claimant can have no more than occasional exposure to excessive noise and vibrations. She can perform simple, routine, repetitive unskilled tasks that require no more than occasional interaction with the public, coworkers and supervisors.

R. 16. At step four, the ALJ found that the Plaintiff has no past relevant work. R. 18. At step five the ALJ determined that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." R. 18. Thus, the ALJ found that the Plaintiff was not disabled.

# IV. MOTIONS FOR SUMMARY JUDGMENT

## A. Legal Standards

### 1. Summary Judgment

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). All inferences must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

### 2. Judicial Review

This court's review of the ALJ's decision is limited to determining whether the decision is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence" is not a "large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 664–65 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Richardson v. Perales*, 402

U.S. 389, 401 (1971). The decision before the court is "not whether the Claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 2001)). The ALJ's decision must be upheld if it is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3).

The Fourth Circuit has been clear that an ALJ's findings "as to any fact, if supported by substantial evidence, shall be conclusive." *Walls v. Barnhart*, 296 F. 3d 287, 290 (4th Cir. 2002) (quoting 42 U.S.C. § 405(g)). Moreover, judicial review "of a final decision regarding disability benefits is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied." *Id.* (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Preston v. Heckler*, 769 F.2d 988, 990 (4th Cir. 1985)). In reviewing the case to determine whether substantial evidence exists, this court should not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency. *Id.* (quoting *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001)).

**B.    Discussion**

The Plaintiff advances two assignments of error. First, the ALJ improperly evaluated the Plaintiff's mental impairments. The court is unpersuaded by the Plaintiff's first argument. Second, the ALJ erroneously assessed the Plaintiff's RFC. The court is persuaded by the Plaintiff's second argument.

<u>1.    The ALJ Complied with the Law When Evaluating the Plaintiff's Mental Impairments</u>

The Plaintiff argues that the ALJ improperly evaluated the Plaintiff's mental impairments.

The Plaintiff's argument relies on *Chandler v. Comm'r, Soc. Sec. Admin.*, No. SAG 15 1408, 2016 WL 750549, at *2 (D. Md. Feb. 24, 2016). The *Chandler* court explained the process the ALJ must follow when evaluating mental impairments:

> The ALJ "must first evaluate [the claimant's] pertinent symptoms, signs, and laboratory findings to determine whether [he or she] ha[s] a medically determinable mental impairment(s)." 20 C.F.R. § 416.920a(b)(1). The ALJ must "then rate the degree of functional limitation resulting from the impairment(s)" in four broad functional areas. *Id*. §§ 416.920a(b)(2), 416.920a©. The ALJ must document the application of the technique in the hearing decision, incorporating pertinent findings and conclusions, and documenting the significant history and functional limitations that were considered. *Id*. § 416.920a(e)(4).

*Chandler*, 2016 WL 750549, at *2. (quotations and alterations original). In *Chandler*, the ALJ's entire analysis of the plaintiff's mental impairments consisted of the following paragraphs:

> Analyzing the "B" criteria for mental impairments, the undersigned finds that the claimant's mental impairments have resulted in mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation of extended duration.
>
> In making this finding, as discussed in greater detail in the residual functional capacity analysis, the undersigned accords significant weight to the opinion of Dr. Woods, as the opinion regarding the absence of any listing-level impairment is well-reasoned, well-documented, and generally consistent with the claimant's activities of daily living and longitudinal treatment records. It is further supported by Dr. Dhir's more recent consultative examination findings. As discussed in more detail below, the opinion of a nurse practitioner that the claimant is disabled by depression is granted no weight, and Dr. Merrion's opinion is only partially credited.

*Id*. The court held that "the ALJ simply stated the degree of functional limitation in each area, with no specific citation to the evidence of record or explanation of the reasons for each finding." *Id*.

The Plaintiff argues that similarly to th ALJ in *Chandler*, "[h]ere while the [ALJ] did rate the degree of functional limitations, as required, he failed to provide adequate explanation to support those conclusions." ECF No. 12 at 7. Specifically, the Plaintiff cites a the ALJ's

allegedly incomplete reasoning:

> In activities of daily living, the claimant has mild restriction. In social functioning, the claimant has moderate difficulties. With regard to concentration, persistence or pace, the claimant has moderate difficulties. As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration. Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

R. 15; ECF No. 12 at 7. The Plaintiff argues that "[t]his conclusory analysis is precisely the type of analysis that the [c]ourt found lacking in *Radford v. Colvin*, 734 F.3d 288, 295 (2013)." ECF No. 12 at 7. In *Radford*, the court held that, "[i]f the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." 734 F.3d at 295 (citations omitted). The *Radford* court discussed that, "[t]he ALJ provided no basis for his conclusion, except to say that he had 'considered, in particular,' the listings above, and had noted that state medical examiners had also 'concluded after reviewing the evidence that no listing [was] met or equaled.'" *Id*. at 292.

A review of the ALJ's decision shows that the ALJ's analysis was not conclusory as in *Chandler* and this court can track the ALJ's reasoning as required by *Radford*. The paragraph cited by the Plaintiff was merely one portion of the ALJ's analysis. Indeed, the ALJ discussed the Plaintiff's mental impairments in detail in the paragraphs immediately preceding the one cited by the Plaintiff. For example the ALJ discussed:

> On July 17, 2012, Michael Barry, PA-C., performed a follow up on the claimant for hypertension and anxiety/depression (Exhibit lF-3). The claimant's chief complaint was anxiety. She said her symptoms improved with treatment. . . .
>
> On an October 29, 2013 checkup at Tri-State Community Health Center . . . [s]he was in no acute distress and was alert and oriented. Her neck, lung, heart, extremity and neurologic exams were normal (Exhibit 4F-2).

On February 6, 2014, Michael Gasparovich, D.O., performed a new patient exam of the claimant (Exhibit 5F-3). On exam, she was oriented in all spheres and in no distress. Her memory and judgment were normal. . . .

On March 19, 2014, John Condit, D.O., evaluated the claimant's tachycardia (Exhibit SF-7). Dr. Condit said the claimant had an appropriate mood and affect without signs of overt depression. Her EKG:NSR was in normal limits. Her memory and cognitive function were normal. . . .

On a June 20, 2014 checkup with Dr. Gasparovich, . . . [s]he demonstrated normal memory and judgment (Exhibit 6F-6, 7).

The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 (affective disorders) and/or 12.06 (anxiety related disorders). . . .

On March 18, 2013, Harold D. Slaughter, Jr., M.A., a licensed psychologist, performed a consultative psychological evaluation of the claimant (Exhibit 2F). Mr. Slaughter said Ms. Ecker was cooperative, but did not appear strongly motivated during the evaluation, since she responded to most questions with she did not know or could not remember (Exhibit 2F-2) . . . Ms. Ecker said she had never seen a psychiatrist and had never had a psychiatric admission. She said her primary care provider prescribed her current psychotropic medications, Pristiq and Xanax (Exhibit 2F-3). On mental status exam, Ms. Ecker demonstrated a normal thought process, coherent and relevant thought content, average judgment, moderately deficient concentration and recent memory, and normal persistence. . . .

Based on the claimant's self-reported symptoms, Mr. Slaughter diagnosed the claimant with mood disorder, not otherwise specified (Exhibit 2F-4). Ms. Ecker discussed impulsivity in the form of cutting behavior, but said she had not done this for a couple of years. She reported anger outbursts, but said she was able to control this behavior to a large extent at her boyfriend's house. She reported transient suicidal ideation with no intent or plan (Exhibit 2F-5).

On July 18, 2014, the claimant had an initial evaluation at Community Behavioral Health for feelings of depressed mood and rage . . . Shanez Jenkins, LGSW, a clinical therapist, diagnosed the claimant with major depression, borderline personality disorder and a GAF of 40 (Exhibit 2F-l1). On August 14, 2014, Brenda Scribner, M.D., a psychiatrist, diagnosed the claimant with intermittent explosive disorder and personality disorder (Exhibit 7F-4). Dr. Scribner said the claimant had no thought disorder and was generally cooperative. Ms. Ecker said she took Wellbutrin and took Xanax every now and then (Exhibit 7F-2). . . .

> On her Adult Function Report, the claimant said she lived in a house with her son. She said she cared for her dogs, and had no problems sleeping or performing personal care. She said she did not need reminders to perform personal care or take her medications. She said she made sandwiches, walked, drove a vehicle, could go out alone and shopped in stores. She said she could manage money. She said she watched television, talked on the phone, and had no problems getting along with family, friends and neighbors. She said she got along with authority figures okay (Exhibit 3E).

R. 14-15. Therefore, the court is unpersuaded by the Plaintiff's first argument because ALJ's analysis was not conclusory and the court can track that ALJ's reasoning.

### 2. The ALJ Erroneously Assessed the Plaintiff's RFC

At step three, the ALJ determined that the Plaintiff had moderate difficulties with concentration, persistence or pace, however, the ALJ did not include a limitation for these difficulties in the Plaintiff's RFC. *See generally* R. 15-18. Rather, the ALJ limited the Plaintiff's RFC to "simple, routine, repetitive and unskilled tasks. . . ." R. 16. Therefore, the Plaintiff argues that the ALJ improperly determined her RFC. The court is persuaded by the Plaintiff's argument.

In *Mascio v. Colvin*, 780 F. 3d 632, 638 (4th Cir. 2015), the court explained that, "we agree with other circuits that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work. (joining the Third, Seventh, and Eighth Circuits)." (citations omitted). *Id*. The court further explained that, "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id*. Thus, similarly the ALJ in *Mascio*, the ALJ here did not account for the Plaintiff's limitations in concentration, persistence or pace by limiting the Plaintiff's RFC to simple, routine, repetitive and unskilled tasks.

Moreover, the *Mascio* court explained that:

> Perhaps the ALJ can explain why [the plaintiff's] moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in [the plaintiff's] residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect [the plaintiff's] ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert.

*Id*. The Government argues that the ALJ adequately explained his reasoning by discussing that, "Dr. Conger said [the Plaintiff] remained functional from a mental perspective, was able to relate in a socially appropriate manner, and displayed overall adequate mental status, with some concentration deficits." R. 18. However, just as the *Mascio* court explained that "the ability to perform simple tasks differs from the ability to stay on task" the Plaintiff's "overall mental status"—which as far as this court can discern relates to the ability to perform tasks—does not address the Plaintiff's ability to stay on task. Therefore, the court is left wondering why the Plaintiff's limitations in concentration, persistence or pace were not included in her RFC.

## V. RECOMMENDATION

Based on the foregoing, the court concludes that the ALJ erred in determining the Plaintiff's RFC. Accordingly, the court **RECOMMENDS THAT**:

1. Plaintiff's [ECF No. 11] Motion for Summary Judgment be **GRANTED IN PART**; and

2. Commissioner's [ECF No. 16] Motion for Summary Judgment be **DENIED**.

3. The case be remanded to the Commissioner of Social Security to include the Plaintiff's limitations in concentration, persistence, or pace in her RFC or to explain why these limitations are not included in her RFC.

Any party who appears *pro se* and any counsel of record, as applicable, may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which

objection is made, and the basis for such objection.

A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985): *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk of the Court is **DIRECTED** to provide a copy of this Report and Recommendation to parties who appear *pro se* and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED: September 29, 2016                              /s/ *James E. Seibert*
                                                       **JAMES E. SEIBERT**
                                                       **U.S. MAGISTRATE JUDGE**